[No. 38646.    Department Two.    April 20, 1967.]

THORGAARD PLUMBING & HEATING CO., INC., *Respondent,*
v. COUNTY OF KING, *Appellant.**

*Reported in 426 P.2d 828.

*Allen, DeGarmo & Leedy, Seth W. Morrison,* and *Charles W. Butterfield,* for appellant.

*Schweppe, Reiter, Doolittle & Krug* and *Warren A. Doolittle,* for respondent.

STAFFORD, J.†—This is an appeal from an order confirming an arbitration award in favor of Thorgaard Plumbing & Heating Co., Inc. (hereinafter referred to as Thorgaard).

On November 27, 1961 Thorgaard entered into a contract with King County (hereinafter called the County) to perform all the heating and plumbing work on a new hangar and shop to be constructed at the King County Airport (Boeing Field). The contract was to be completed by July 5, 1962. However, the work was not finished until March 20, 1963.

Thorgaard alleged that the County, its architects and another prime contractor delayed the company 259 days beyond the original completion date. Thorgaard also asserted that by reason of the delay it was subjected to legal expenses in defending a suit for delay damages by one of its own subcontractors, Automatic Sprinkler Corporation.

Between March 26 and May 24, 1963 Thorgaard sent a series of letters claiming delay damages. These letters were later detailed, clarified and amended in September 1963 and June 1965. The record does not disclose their contents or to whom they were sent. However, the first four were acknowledged by the County's architects in a series of answering letters sent between March 28 and August 23, 1963.

---

†Judge Stafford is serving as a judge pro tempore of the Supreme Court pursuant to Art. 4, § 2(a) (amendment 38), state constitution.

The County accepted the work performed by Thorgaard on October 7, 1963. However, the subject of delay damage and legal expenses remained in dispute.

On May 14 and May 24, 1963 and again on March 15, 1965 Thorgaard demanded arbitration. Finally the County agreed to submit the dispute to arbitration pursuant to article 40 of the contract.[1]

Through a joint letter of their attorneys, the parties advised the arbitrators that they were appointed to hear a *dispute* that had arisen over the contract of November 1961. The letter also included the rules of arbitration and provided for payment of the arbitrators.

Arbitration hearings were held July 20 and 21, 1965 at which time both Thorgaard and the County participated fully. However, prior to and during the hearing the County sought to withdraw from consideration Thorgaard's claim for legal expenses incurred in defense of the suit for delay damages.

On August 4, 1965 a majority of the arbitrators rendered their decision. They found Thorgaard's damages to be $18,540.44.

Three days later Thorgaard submitted a formal claim for payment of the arbitration award. The Board of County Commissioners rejected it on October 6, 1965.

Thereafter, Thorgaard filed a motion to have the trial court confirm the arbitration award pursuant to RCW 7.04.150. The County moved to vacate the award as provided in RCW 7.04.160(4) alleging that:

the arbitrators exceeded their powers, or so imperfectly executed them that a final and definite award upon the subject matter submitted was not made.

In the alternative they asked the trial court to correct the award pursuant to RCW 7.04.170, alleging that:

---

[1]All disputes, claims or questions subject to arbitration under this contract shall be submitted to arbitration in accordance with the provisions . . . of the Standard Form of Arbitration Procedure . . . . . It is mutually agreed that the decision of the arbitrators shall be a condition precedent to any right of legal action that either party may have against the other."

1. there was an evident miscalculation of figures or an evident mistake in the thing referred to in the award.
2. the arbitrators have awarded upon a matter not submitted to them.

Finally, for the first time of record, the County moved for a dismissal of the entire proceeding. It alleged that Thorgaard had failed to file a written claim with the Board of County Commissioners within 90 days of the damage occurring, as required by RCW 36.45.010.

The trial court denied the County's motions, confirmed the arbitration award and granted Thorgaard a judgment for $18,540.44 against the County.

The County assigns error to the trial court's refusal to dismiss the action. The claim was not filed with the Commissioners until August 7, 1965, immediately after the arbitration award. This, asserts the County, was far in excess of the statutory period.[2]

The County supports its contention with several well established rules: RCW 36.45.010 applies to claims in contract. *Puget Constr. Co. v. Pierce Cy.*, 64 Wn.2d 453, 392 P.2d 227 (1964). The 90 days within which a claim must be filed begins to run no later than the date a county accepts the project (October 7, 1963 was the date of acceptance). *Puget Constr. Co. v. Pierce Cy., supra.* The filing of a claim in accordance with the foregoing statute is a condition precedent to a right of action against a county (a claim was not filed until August 7, 1965). *Caron v. Grays Harbor Cy.*, 18 Wn.2d 397, 139 P.2d 626, 148 A.L.R. 626 (1943). Compliance with the statute may not be waived by a county, *Forseth v. Tacoma*, 27 Wn.2d 284, 178 P.2d 357 (1947), and the courts may not ignore the "nonclaim" statute. *Caron v. Grays Harbor Cy., supra.*

Neither article 40 of the contract nor RCW 7.04 *et seq.* requires the filing of a claim as a condition precedent to

---

[2]RCW 36.45.010 "Time for filing. All claims for damages against any county must be presented before the board of county commissioners and filed with the clerk thereof within ninety days from the date that the damage occurred . . . ."

arbitration. Yet, RCW 36.45.010 makes such a claim a condition precedent to a right of action against a county.

Few state courts have had an opportunity to explore the area of apparent conflict between a "nonclaim" and an "arbitration" statute. It is a case of first impression for this court.

RCW 36.45.010 requires the filing of "All *claims* for damages . . . within ninety days from the date that the damage occurred . . ." (Italics ours.) RCW 36.45.030 provides that no "*action* shall be maintained on any *claim* for damages until it has been presented to the board of county commissioners . . . but such *action* [*e.g.* on the claim for damages] must be commenced within three months . . . ." (Italics ours.)

■ An *action* is a prosecution *in a court* for the enforcement or protection of private rights and the redress of private wrongs. *Ginzberg v. Wyman,* 272 Mass. 499, 172 N.E. 614 (1930); *Muirhead v. Johnson,* 232 Minn. 408, 46 N.W.2d 502 (1951); *Madison v. Frank Lloyd Wright Foundation,* 20 Wis. 2d 361, 122 N.W. 2d 409 (1963); *Brooks v. Ulanet,* 116 Vt. 49, 68 A.2d 701 (1949). It is clear that by using the word "action" in the foregoing section the legislature had a *lawsuit* in mind. This is consistent with RCW 4.04.020, which provides:

> There shall be . . . but one form of *action* for the enforcement or protection of private rights and the redress of private wrongs, which shall be called a civil *action.* (Italics ours.)

Thus, the legislature has prescribed the conditions under which a county may be sued. *Cook v. Clallam Cy.,* 27 Wn.2d 793, 180 P.2d 573 (1947). If one intends to bring an action (*e.g.* a lawsuit) against a county, he must do so in the manner provided by RCW 36.45.010. However, this has nothing to do with a statutory arbitration proceeding.[3]

---

[3] There are other well recognized exceptions to the claim-filing requirement of RCW 36.45.010. We have held that it is not applicable to cost bills, fees, for the official court reporter, expenses of a judge holding court out of his regular county, claims for payment of excessive taxes and unpaid salary, to name a few.

■ For many years this court has recognized that municipal corporations are authorized to arbitrate their disputes. *Jackson v. Walla Walla,* 130 Wash. 96, 226 Pac. 487 (1924); 5 Am. Jur. 2d *Arbitration and Award* §§ 67, 68, pp. 569, 570. Adoption of the arbitration statute in 1943 and its later amendment in 1947 did not alter this power.

RCW 7.04 *et seq.* provides a means by which disputants may dispose of controversies other than by an action in court. They may resort to arbitration.

■ An arbitration proceeding is not had in a court of justice. It is not founded on the filing of a claim or complaint as they are generally understood. The very purpose of arbitration is to *avoid* the courts insofar as the resolution of the dispute is concerned. *Son Shipping Co. v. De Fosse & Tanghe,* 199 F.2d 687 (2d Cir. 1952).[4] It is a substitute forum designed to reach *settlement* of controversies, by extrajudicial means, *before* they reach the stage of an *action* in court. RCW 7.04.010 makes this purpose evident:

> Two or more parties may agree . . . *to submit to arbitration* . . . *any controversy* which may be the *subject of an action existing* between them at the time of the agreement . . . or they may include . . . a provision to *settle* by arbitration *any controversy* thereafter arising between them out of or in relation to such agreement. (Italics ours.)

RCW 7.04.030 makes it clear that there is a difference between an action and an arbitration proceeding;[5] that ar-

---

[4] In the cited case a federal statute of limitations was held not to be a time bar because arbitration is not a "suit" as that term is used in the statute. Instead, it is the performance of a contract providing for the resolution of a controversy *without* suit.

[5] The arbitration clause of the contract recognizes the same distinction by providing that the parties may submit their disputes to arbitration and that a *"decision of the arbitrators* shall be a *condition precedent* to any *right of legal action."* (Italics ours.)

A "right of action" is not synonymous with "cause of action" *Swankowski v. Diethelm,* 98 Ohio App. 271, 129 N.E.2d 182 (1953). It is a right to enforce a "cause of action" by suit. *McMahon v. United States,* 186 F.2d 227 (3d Cir. 1950). A "right of action" is the right to pursue a *judicial* remedy. A "cause of action" is based on the substantive law of legal liability. *Elliott v. Chicago, M. & St. P. Ry.,* 35 S. Dak. 57, 150 N.W. 777 (1915); *Adams v. Albany,* 80 F. Supp. 876 (1948); *United States v. Standard Oil Co. of Calif.,* 21 F. Supp. 645 (1937).

bitration is a substitute for, rather than a mere prelude to, litigation. If either party attempts to initiate an action contrary to the arbitration contract, the other party may move to have the action stayed and the court in which the action is pending

> shall . . . stay the *action* . . . until an *arbitration* has been had in accordance with the agreement. RCW 7.04.030. (Italics ours.)

While arbitration is similar to a judicial inquiry in that witnesses are called and evidence is considered, the standards of judicial conduct and efficiency to which a panel of arbitrators will be held are markedly different from those resting by law and tradition upon judicial officers. *Northern State Constr. Co. v. Banchero*, 63 Wn.2d 245, 386 P.2d 625 (1963). The proceeding is in a forum selected by the parties in lieu of a court of justice. The object is to *avoid*, what some feel to be, the formalities, the delay, the expense and vexation of ordinary litigation. *Son Shipping Co. v. De Fosse & Tanghe, supra*. It depends for its existence and for its jurisdiction upon the parties having contracted to submit to it, and upon the arbitration statute.

The fact that a party to the arbitration may apply to the court for confirmation of the award[6] is not to be equated with the bringing of an *action* for the collection of compensation, within the meaning of RCW 36.45.010. It is no more than a motion for an order to enforce an award of compensation already made by the arbitrators, pursuant to contract. If the award is not modified, vacated or corrected, the court "*shall* grant such an order."[7] In such event the court has a mere ministerial duty of entering judgment on the award. 6 C.J.S. *Arbitration and Award* § 129.

RCW 36.45.010 and RCW 7.04 *et seq.* are not incompatible. They are designed to deal with entirely different prob-

---

[6]RCW 7.04.150 "Confirmation of award by court. . . . any party to the arbitration may apply to the court for an order confirming the award, and the court shall grant such an order unless the award is vacated, modified, or corrected . . . ."

[7]*Ibid.*

lems. The former statute is not intended to control the settlement of controversies in which a valid contract to arbitrate is in force. *Madison v. Frank Lloyd Wright Foundation, supra; Son Shipping Co. v. De Fosse & Tanghe, supra.* In such event RCW 7.04 *et seq.* governs.

The County next contends that the arbitrators exceeded their power by making an award for legal expenses.

■ The arbitration clause of the contract, article 40, provides in part as follows:

> All *disputes,* claims or questions subject to arbitration under this contract shall be submitted to arbitration. (Italics ours.)

Where the language of the arbitration clause indicates a desire on the part of the parties to include all controversies that may arise under the principal agreement, the clause is generally given effect and no more specific designation of arbitrable matters is needed. 5 Am. Jur. 2d *Arbitration and Award* § 14.

However, the power of this arbitration board is based on broader grounds. In addition to article 40, *supra,* the joint letter of the parties advised the arbitrators that they were submitting

> a *dispute* that has arisen . . . out of certain contracts . . . pertaining to the construction of a hangar.
> . . . .
> Thorgaard . . . is claiming $27,537.84 all of which is denied by King County.

Any question of the extent of the dispute is resolved by the County's brief. It reveals that long before the matter was finally submitted to the arbitrators the following occurred:

> During the course of the work, Thorgaard claimed that King County, its architects . . . and . . . another prime contractor, delayed Thorgaard and its subcontractors in the completion of their work by approximately 259 calendar days. . . .
> Thorgaard further claimed that by reason of this delay, Thorgaard was subjected to legal expenses in defending a suit for delay damages by a Thorgaard subcontractor, Automatic Sprinkler Corporation.

Clearly, the arbitration clause of the contract and the letters which submitted the matter for arbitration, empowered the arbitrators to consider a controversy involving *delay damages*. In fact, this does not seem to be seriously challenged by the County. However, the County charges that the legal expenses incurred by Thorgaard in defending the suit for delay damages were not submitted for arbitration. We must disagree.

There was an unqualified and unrestricted submission of *delay damages*. We cannot say that the arbitrators were incorrect in holding that expenses incurred by Thorgaard were an integral part of the total picture of delay and resultant damages.

■ Arbitrators, when acting under the broad authority granted them by both the agreement of the parties and the statute, become the judges of both the law and the facts, and, unless the award on its face shows their adoption of an erroneous rule, or mistake in applying the law, the trial court should not vacate or modify the award. *Northern State Constr. Co. v. Banchero, supra.* No such error appears here.

The County avers that since it attempted to withdraw the subject of legal expenses from arbitration the arbitrators erred by failing to exclude that issue from their final determination. This assignment of error is not well taken.

■ The broad dispute over delay damages was properly submitted to the arbitration board. Once that was done, the County could not unilaterally circumscribe the board's power by withdrawing certain of these items of damages from their consideration. The agreement to arbitrate was irrevocable save on such grounds as exist for the revocation of any such agreement. RCW 7.04.010. No such grounds have been divulged in this record.

The subject matter was within the issues submitted. The board had the power to make the award. There is nothing on the face of the findings to show that the arbitrators failed to give due consideration to all matters after providing a full and fair hearing on the facts.

Next, the County asserts that the trial court erred by entering a summary judgment which was broader than the issues decided by the arbitrators. It alleges that the arbitrators did no more than find that Thorgaard was delayed in the performance of the contract; that the delay was caused by the action or inaction of the County; that Thorgaard was damaged; and then set an amount of damages. The County argues that the arbitrators failed to find that it had breached a duty to Thorgaard and also failed to base ultimate liability on such breach. Thus, it says, the trial court lacked legal justification for its judgment.

The contention is wholly without merit. The board actually found:

1. That Thorgaard was delayed in the performance of the contract;

2. That Thorgaard was damaged by the delay;

3. That Thorgaard's damage was $18,540.44, including the sum of $3,542.50 for attorney fees in defending the Automatic Sprinkler case and including $850 for attorney fees for handling the arbitration matter;

4. That *the delay and damages are the result of the actions or inaction of King County* and their representatives. (Italics ours.)

5. The evidence . . . indicates that the County recognizes that it *has a responsibility* under the contract *for certain delays resulting in increased costs* to a contractor engaged by the County. (Italics ours.)

The arbitrators not only found that the delay damages resulted from the action or inaction of the County, but also found that the County recognized its *responsibility* for certain delays which resulted in increased costs (*e.g.* damages) to the contractor. That finding is not challenged by the County.

■ By determining *responsibility* the arbitrators found that there was a breach of duty as well as liability. "Responsibility" is the obligation to answer for an act done and to repair any injury it may have caused. Black's Law Dictionary (4th ed.). "Responsibility" is to be answerable for the discharge of a *duty* or *obligation. Niagara Fire Extinguisher Co. v. Hibbard,* 179 Fed. 844 (7th Cir. 1910). As

136

stated in Ballentine's Law Dictionary, it is one's liability, his obligation, his duty. In fact, "responsibility" is virtually synonymous with "liability." *Murphy v. Chicago League Ball Club,* 221 Ill. App. 120 (1921); *State ex rel. Milwaukee v. Milwaukee Elec. Ry. & Light Co.,* 144 Wis. 386, 129 N.W. 623 (1911).

The trial court properly entered a money judgment based upon the arbitrator's finding of responsibility for delay and damages.

■ Finally, the County has assigned error because the trial court did not enter findings of fact in support of the judgment rendered pursuant to RCW 7.04.150. However, Rule of Pleading, Practice and Procedure 52.04W, RCW vol. 0, which requires findings of fact in cases *tried* before the court without a jury, is not applicable. As previously indicated, the confirmation of an arbitration award, authorized by RCW 7.04.150, is not a trial. Findings of fact would have been superfluous. *State ex rel. Zempel v. Twitchell,* 59 Wn.2d 419, 367 P.2d 985 (1962).

The judgment is affirmed.

FINLEY, C. J., DONWORTH, HUNTER and HAMILTON, JJ., concur.

*Reported in 426 P.2d 851.